STATE OF NORTH CAROLINA v. RICHARD EUGENE WATSON

No. 394A83

(Filed 6 March 1984)

1. **Criminal Law § 135.4— determining applicability of aggravating factor prior to trial**

   Procedure whereby the trial court determined prior to trial of a first degree murder case that the aggravating circumstance relied on by the State was not supported by sufficient evidence and that the case should be tried as a non-capital first degree murder case is commended for its judicial economy and administrative efficiency.

2. **Constitutional Law § 31— refusal to appoint expert for indigent defendant**

   The trial court in a first degree murder case did not abuse its discretion under G.S. 7A-454 in refusing to appoint an expert to determine, at State expense, the extent and impact of pretrial publicity about the case in the county of trial and adjoining counties where defendant had the full opportunity before trial to assemble and document all available data on pretrial publicity in the case and to question each potential juror about exposure to the publicity and any effect this may have had, and defendant has not shown what, if anything, the requested survey would have added to this information. Nor was the indigent defendant denied equal protection because of the court's refusal to appoint the expert.

3. **Criminal Law § 15.1— pretrial publicity—denial of change of venue or special venire**

   The trial court in a first degree murder case did not err in the denial of defendant's motion for a change of venue or a special venire from another county because of pretrial newspaper and television publicity where the court found that newspaper and television coverage concerning details of the killing and defendant's arrest was factual and likely to be gleaned from evidence at the trial; news accounts concerning the victim were not overly dramatized; a period of seven months had elapsed since the news coverage about the killing; the crime took place in the largest urban area in this State; the transcript of the jury selection process revealed that, although most of the potential jurors had heard of the case, none knew the victim or his family, none stated that he or she had formed an opinion about the case or knew the facts, none had visited the scene of the crime or talked about the case with any person involved therein, and none was a neighbor of the victim or his family; each juror selected to hear defendant's case stated that he or she could set aside any

State v. Watson

preconceived notions and determine defendant's guilt or innocence solely on the basis of the evidence at trial; and defendant made no attempt to challenge peremptorily another potential juror after exhausting his peremptory challenges. G.S. 15A-957; G.S. 15A-958.

**4. Jury § 6— denial of individual examination of prospective jurors**

The trial court in a non-capital first degree murder case did not err in the denial of defendant's motion to examine the prospective jurors individually. G.S. 15A-1214(j).

**5. Jury § 7.7— challenge for cause—failure to preserve for appellate review—denial of additional peremptory challenges**

Defendant failed to preserve for appellate review his objection to a challenge for cause and failed to show prejudice caused by the court's denial of his motion for additional peremptory challenges where defendant never attempted to challenge peremptorily another juror after using all of his peremptory challenges, and where defendant failed to renew his challenge for cause after exhausting his peremptory challenges as required by G.S. 15A-1214(h) and (i).

**6. Criminal Law § 43— admission of photographs for illustrative purposes**

A photograph of a homicide victim in the hospital emergency room was properly admitted to illustrate the victim's appearance during the course of the emergency room treatment, and a photograph of the victim behind a desk with his fishing pole at his side was properly admitted to illustrate the victim when he was alive.

**7. Homicide § 30.3— first degree murder case—failure to submit involuntary manslaughter**

The trial court in a first degree murder case did not err in failing to submit involuntary manslaughter as a permissible verdict where defendant admitted that he intended to fire the gun he was holding pointed in the direction of the victim and that he was fully aware that the gun was loaded.

ON appeal by defendant from judgment entered by *Snepp, J.,* at the 28 February 1983 Criminal Session of Superior Court, MECKLENBURG County. Heard in the Supreme Court 13 December 1983.

Defendant was charged in an indictment proper in form with murder in the first degree of Ernest Coleman, a Charlotte police officer working off duty at Peso's Food King on the night of 30 June 1982. The judge ruled prior to trial that the case would be tried as a non-capital case, there being insufficient evidence of aggravating circumstances which would justify imposition of the death penalty. Judge Snepp imposed the mandatory life sentence following a jury verdict of guilty of murder in the first degree.

Evidence presented by the state tended to show that the decedent was employed by Wallace Paysour, owner of Peso's Food King, to maintain peace and order in the store and to apprehend shoplifters. On the night in question, at about 7:00, defendant and his girlfriend, Brenda Brannon, were observed entering the store, arguing loudly as they came in and continuing the disturbance as they proceeded to the back of the store. Ernest Coleman approached them to break up the argument. There was a scuffle in the course of which Coleman pinned defendant's arm behind his back and pushed him out of the store, letting him go, after a brief struggle, about five or ten yards from the door of the store. As Watson was urged away from the store by Brenda Brannon, he was heard to say, "You're dead, . . ." to Coleman.

Defendant, going to a nearby park, approached a man named B. B. Reid and asked if he had a pistol. Reid held out a towel with a pistol in it. Defendant grabbed the weapon and ran back down toward the store. He told a bystander to go in the store and tell Coleman "that somebody out here wants to see him." He approached the store, then waited. When Officer Coleman emerged from the store with Paysour, defendant aimed the gun at Coleman with both hands and shot twice, wounding Coleman in the head. Defendant ran and was apprehended at about 11:30 that night outside a nearby apartment complex where he lived. Officer Coleman died shortly after midnight on 1 July 1982 of a gunshot wound to the head. At the time of the shooting he was in full uniform; the uniform was not "messed up" in any way; his revolver was in his holster; his radio was in place.

Defendant testified in his own behalf. His evidence tended to show that he and Brenda Brannon entered the store talking about a little problem they had, left the store when Brannon said something loud, then reentered the store. In line at the cash register, they were approached by Officer Coleman who asked if there was a problem and said to defendant, "Boy, I don't like you no way . . . You know, I feel like doing something to you." Coleman then grabbed defendant by the throat, gagging him, and threw him down on the floor. A struggle ensued which ended outside the store. Brannon left to return to the apartment complex; defendant went into a nearby restaurant and ordered a sandwich. While it was being prepared, he stepped outside and saw Officer Coleman

and Wallace Paysour emerging from Peso's. Coleman saw defendant and flinched as if reaching for a weapon. Defendant, afraid, panicked and shot his gun. After the first shot, when Coleman turned, defendant shot again, to scare Coleman, not to hit him. He ran, not knowing he had wounded Coleman. Defendant had found the pistol a week earlier and was intending to sell it. He had it on his person when he and Brannon first approached Peso's but left it in a brown bag across the street before they entered the store. He retrieved it after he had been ejected from Peso's. He did not aim the weapon with two hands. He shot with one hand. It was loaded when he found it and had been loaded ever since.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the state.*

*Isabel Scott Day, Public Defender, Twenty-Sixth Judicial District, for defendant.*

MARTIN, Justice.

[1]   We begin with a procedural note which we suggest is worthy of consideration by trial counsel in appropriate cases: Prior to the trial of this case, counsel for this defendant submitted the following motion to Judge Snepp:

Now comes Defendant, by and through his counsel, Fritz Y. Mercer, Jr., and Isabel S. Day, and moves the Court to schedule a hearing prior to the trial of this case with regard to whether there is sufficient evidence to support the submission to the jury of the Aggravating Circumstance NCGS 15A-2000(e)(8).

The Defendant shows unto the Court the following:

1. Defendant is charged with the First Degree Murder of Ernest Coleman;

2. In the event of guilty verdict of First Degree Murder, the State intends to request that the Aggravating Circumstance NCGS 15A-2000(e)(8) be submitted to the jury at the sentencing phase for a possible sentence of death;

3. The State contends that only one Aggravating Circumstance is supported by the evidence, NCGS 15A-2000(e)(8);

4. The Defendant contends that such evidence as will be presented by the State, whether at trial or at sentencing, is insufficient as a matter of law to call for the submission to the jury of the Aggravating Circumstance NCGS 15A-2000 (e)(8);

5. A pre-trial determination as to whether the evidence supports the applicability of this Aggravating Circumstance is important for the following reason:

If the Aggravating Circumstance is inapplicable, the time-consuming processes peculiar to a capital case — e.g., filing and hearing numerous motions, selecting a "death qualified" jury — will have been avoided.

Therefore, Defendant moves the Court to grant this request for a hearing prior to trial to determine the applicability of NCGS 15A-2000(e)(8).

The pertinent aggravating circumstance is: "The capital felony was committed against a law enforcement officer . . . while engaged in the performance of his official duties or because of the exercise of his official duty." N.C. Gen. Stat. § 15A-2000(e)(8) (1983). The able trial judge, finding "under the circumstances of this case, it is in the best interests of justice, the public, and the judicial system, that this be determined prior to trial," ruled that Officer Coleman was not shot by defendant because of the exercise of his official duty and that the case therefore would be tried as a non-capital first degree murder case.

We do not here question or consider the correctness of this ruling. We do commend this procedure for its judicial economy and administrative efficiency.

Defendant raises seven issues on appeal, the first four having to do with the following set of circumstances surrounding this shooting incident: On the day Ernest Coleman was killed, a Mecklenburg County jury had earlier convicted and given a life sentence to the accused killer of another Charlotte police officer. The deaths of these two men had occurred within a seven-month period. Not unexpectedly, during the summer of 1982 local press and media coverage of the Coleman shooting included recitals of the earlier killing, interviews with jurors from the first trial, and general exhortations from the mayor, the police, and the public

concerning the need to deal more severely with the problem of "cop-killing."

Based on these factors, counsel for defendant Watson: (1) moved the court to appoint an expert to determine, at state expense, the extent and impact of pretrial publicity about this case in Mecklenburg and adjoining counties; (2) moved the court for a change of venue or in the alternative for a special venire from another county; (3) moved the court at trial to allow counsel to voir dire the prospective jurors individually and to sequester the jurors from the courtroom during the voir dire; and (4) moved at trial for additional peremptory challenges during jury selection.

The trial judge's denial of each of these motions is the subject of defendant's first four arguments on appeal to this Court. We consider each in turn and, for reasons which follow, find no error in the rulings on these motions.

[2] On 19 October 1982, counsel for the defendant filed a motion to appoint Dr. Paul Brandes to conduct the above-mentioned survey of Mecklenburg County and adjoining counties. Dr. Brandes is affiliated with Legal Experimental Consultants in Chapel Hill, a company offering its clients a research service wherein a statistical determination is made of the effects of pretrial publicity on possible juror bias. The trial judge heard evidence and arguments on the motion during that same week, whereupon he denied the motion.

Defendant argues that the services of this expert were essential to the case he would later be making to the trial court for a change of venue in this matter. He further argues that he has a statutory and constitutional right to this assistance. A solvent defendant could have hired Dr. Brandes to aid in the effectiveness of his defense—in this case measuring the effects of the massive pretrial publicity. Defendant concedes that by statute the appointment of experts for an indigent lies within the discretion of the trial judge. *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976). In this case, he argues, the trial court "abused his discretion in chilling defendant's right to show the extent to which a fair trial was impossible in Mecklenburg County."

We disagree. The relevant statutory provisions are as follows:

N.C.G.S. 7A-454 provides that "[t]he court, *in its discretion*, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State." (Emphasis ours.)

N.C.G.S. 7A-450(b) provides that "[w]henever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the *other necessary expenses of representation.*" (Emphasis ours.)

This Court has dealt at length with the questions of whether and when an indigent is entitled to the appointment of an expert witness at state expense to assist in his defense. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976); *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976). In sum, the Court first recognizes that "all defendants in criminal cases shall enjoy the right to effective assistance of counsel and that the State must provide indigent defendants with the basic tools for an adequate trial defense or appeal." *State v. Tatum, supra*, 291 N.C. at 80, 229 S.E. 2d at 566-67. *Accord Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed. 2d 799 (1963). We have held, however, that the state has no constitutional duty to provide an expert witness to assist in the defense of an indigent. *State v. Tatum, supra; State v. Gray, supra; accord Smith v. Baldi*, 344 U.S. 561, 97 L.Ed. 549 (1953). This is a question properly left within the sound discretion of the trial judge. *State v. Tatum, supra.* The applicable rule is that expert assistance need only be provided by the state when the defendant can show it is probable that he will not receive a fair trial without the requested assistance, *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740 (1983), or upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense. *State v. Gray, supra.* Mere hope or suspicion that favorable evidence is available is not sufficient. *State v. Tatum, supra.*

We find upon studying the circumstances of this case and details of the proposed Brandes survey that defendant's argument fails in precisely this regard. He had the full opportunity before trial to assemble and document all available data on pretrial

publicity in this case and to question each potential juror about exposure to the publicity and any effect this may have had. Defendant has not shown what, if anything, the requested survey would have added to this information. As the trial judge observed at the close of the hearing on this motion, the survey could not demonstrate to his satisfaction how much bias (as opposed to knowledge) remained six or seven months after the summer 1982 media coverage, nor how much of this publicity was even noted by individuals who might later serve as jurors in this trial. We find no abuse of discretion in his refusal to grant this motion.

Nor are we persuaded by defendant's equal protection argument regarding "the fundamental question of equality between the ability of a solvent and indigent defendant to present an effective defense." This Court has responded to this line of reasoning as follows:

> The equal protection clause of the Fourteenth Amendment prevents a state from making arbitrary classifications which result in invidious discrimination. It "does not require absolute equality or precisely equal advantages." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 36 L.Ed. 2d 16, 93 S.Ct. 1278. In this case the State has imposed no arbitrary barriers which hinder or impede defense counsel's investigation or preparation of his case. There has merely been a refusal to provide defendant with an additional defense tool which is available to wealthier persons accused of crime. It was recognized in *Griffin v. Illinois*, 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585, which defendant cites in support of his argument, that this circumstance alone does not amount to a denial of equal protection by the State:
>
> > . . . Of course a State need not equalize economic conditions. A man of means may be able to afford the retention of an expensive, able counsel not within reach of a poor man's purse. Those are contingencies of life which are hardly within the power, let alone the duty, of a State to correct or cushion. (Frankfurter, J., concurring in the judgment.)

*State v. Tatum, supra*, 291 N.C. at 83, 229 S.E. 2d at 568. This assignment of error is overruled.

**[3]** On 29 September 1982, defense counsel moved the court for a change of venue for the trial pursuant to N.C.G.S. 15A-957[1] or in the alternative for a special venire from another county pursuant to N.C.G.S. 15A-958, on the grounds that defendant could not obtain a fair and impartial trial in Mecklenburg County. During the 10 January 1983 session of superior court, Judge Snepp conducted a full evidentiary hearing on the matter. In support of this motion, defendant submitted materials including virtually all newspaper accounts of the Coleman shooting, scripts of TV coverage, and videotapes of a number of the TV broadcasts. On 18 January 1983, Judge Snepp issued a memorandum opinion and order denying the motion, in which he made findings of fact and discussed the law applicable to this question.

We have read through the above-mentioned press clippings and television news broadcast scripts, the transcript of the hearing on the motion, the trial judge's order with its accompanying memorandum opinion, and the transcript of the subsequent jury selection process at trial. Based thereon, we do not find error in the trial court's refusal to grant this motion. Judge Snepp's findings of fact support his denial of the motion; the evidence in the record supports his findings of fact; the transcript of the jury selection process yields no showing of prejudice to defendant from the denial of the motion for a change of venue.

On this issue, the burden is on the defendant to prove prejudice so great that he cannot obtain a fair and impartial trial. *State v. Corbett,* 309 N.C. 382, 307 S.E. 2d 139 (1983); *State v. Richardson,* 308 N.C. 470, 302 S.E. 2d 799 (1983); *State v. McDougald,* 38 N.C. App. 244, 248 S.E. 2d 72 (1978), *disc. rev. denied,* 296 N.C. 413 (1979). The determination whether the defendant has met his burden of proof rests in the sound discretion of the trial judge. His ruling will not be overturned on appeal absent a showing of gross abuse of discretion. *State v. Corbett, supra; State v. Dobbins,* 306 N.C. 342, 293 S.E. 2d 162 (1982); *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981).

---

1. N.C.G.S. 15A-957 provides that "[i]f, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either: (1) Transfer the proceeding to another county in the judicial district or to another county in an adjoining judicial district, or (2) Order a special venire under the terms of G.S. 15A-958."

At the heart of the matter is the due process requirement that the defendant receive a trial by an impartial jury free from outside influences. *Sheppard v. Maxwell*, 384 U.S. 333, 16 L.Ed. 2d 600 (1966); *State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976). What defendant must prove in meeting his burden on this motion is that "it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E. 2d 339, 347 (1983). *See also State v. McDougald, supra*. Furthermore, when a defendant later alleges prejudice at trial on the basis of pretrial publicity, he must show that he exhausted his peremptory challenges, or that he had to accept jurors who were prejudiced by pretrial publicity. *State v. Dobbins, supra.*

We find that the arguments of this defendant have failed in both respects, showing neither abuse of discretion nor prejudice.

That there was extensive press and media publicity of the Coleman shooting is not of itself enough. How prejudicial to this defendant is this pretrial coverage? *State v. Richardson, supra,* 308 N.C. 470, 302 S.E. 2d 799. This Court has held consistently that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue. *State v. Dobbins, supra,* 306 N.C. 342, 293 S.E. 2d 162. In cases where coverage of the arrests only indicated that defendants had been charged with a crime, and news articles were "factual, non-inflammatory, and contained for the most part information that could have been offered in evidence at defendants' trial," the motion for a change of venue has been held properly denied. *State v. Oliver, supra,* 302 N.C. at 37, 274 S.E. 2d at 190. *Accord State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated*, 429 U.S. 809 (1976).

Having found as facts that all the coverage—newspapers and television—concerning details of the killing and defendant's arrest was factual and likely to be gleaned from evidence at trial, the trial court further found that similar news accounts of the victim, Ernest Coleman, were not overly dramatized. In addition, there was "no evidence of any media coverage from October 20 to the date of this hearing on January 13, 1983." Indeed, we note

that a period of some seven months had elapsed since the intense news coverage in the previous July.

In considering the totality of the circumstances, this Court has also taken note of the social and geographic context of the crime and accompanying pretrial publicity. In *State v. Jerrett, supra,* Chief Justice Branch took care to note:

> The evidence at the pretrial hearing, standing alone, was sufficient to reveal a reasonable likelihood that defendant could not receive a fair trial in Alleghany County due to the deep-seated prejudice against him. In so concluding, we think it extremely significant to note that here, the crime occurred in a small, rural and closely-knit county where the entire county was, in effect, a neighborhood. This fact distinguishes instant case from *United States v. Haldeman,* 559 F. 2d 31 (D.C. Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed. 2d 250, *rehearing denied,* 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed. 2d 1103 (1977), and others where although the publicity was great, the crimes occurred and the trials were held in large urban areas.

309 N.C. at 256-57, 307 S.E. 2d at 348 (footnote omitted).

This crime took place in the largest urban area in this state. The area also has one of the highest murder rates in the state. Its connection in time with the killing of another Charlotte police officer becomes no less tragic, but not necessarily determinative, when we bear this in mind.

Defendant has not shown prejudice at trial. The transcript of the jury selection process reveals: Although most of the potential jurors in the venire had heard of the case, none knew the victim or his family, none stated that he or she had formed an opinion about the case or knew the facts; none had visited the scene of the crime or talked about the case with any person involved therein; no potential juror was a neighbor of the victim or his family. Moreover, each juror selected to hear defendant's case had unequivocally responded in the affirmative when asked by the trial judge if he or she could set aside preconceived notions and determine defendant's guilt or innocence solely on the basis of evidence introduced at trial.

Defendant exhausted his peremptory challenges, then later moved the trial court: "for the record I make a motion for additional peremptory challenges." The trial court's denial of this motion is not all that is required to show the necessary prejudice to prevail on this issue. No further attempt to peremptorily challenge any potential juror having been made, defendant has not proven that an objectionable person sat on the jury in this trial. *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969).

The motion to change venue was properly denied.

[4] Defendant argues that it was reversible error for the trial court to deny his motion to examine the prospective jurors individually. The applicable statute provides that *"[i]n capital cases* the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C. Gen. Stat. § 15A-1214(j) (1983) (emphasis added).

By his prior order of 11 February 1983, the trial court had ruled that defendant's case would be tried as a non-capital, first degree murder case. Under N.C.G.S. 15A-1214(j), defendant does ·not have a right to have the jurors selected individually. The trial judge has broad discretion in the manner and method of jury voir dire in order to assure that a fair and impartial jury is impaneled, *State v. Phillips*, 300 N.C. 678, 268 S.E. 2d 452 (1980), and N.C.G.S. 15A-1214(d), (e), (f) sets forth the procedure ordinarily followed in non-capital trials.

This assignment of error is meritless.

[5] Defendant next seeks a finding of prejudicial error in the denials by the trial court of his challenge for cause and his motion for additional peremptory challenges.

With respect to the challenge for cause, defendant has not properly preserved his objection for appellate review. By the same token, he has made no showing of prejudice caused by the trial court's denial of his motion for additional peremptory challenges.

Numerous decisions of this Court have upheld the rule on this question, which is summarized as follows:

"Where the court has refused to stand aside a juror challenged for cause, and the party has then peremptorily challenged him, in order to get the benefit of his exception he must exhaust his remaining peremptory challenges, and then challenge another juror peremptorily to show his dissatisfaction with the jury, and except to the refusal of the court to allow it."

*State v. Allred, supra*, 275 N.C. at 563, 169 S.E. 2d at 838 (quoting headnote in *Carter v. King*, 174 N.C. 549, 94 S.E. 4 (1917)).

As noted above, the defendant in this case never attempted to peremptorily challenge another juror after using all his peremptory challenges. His motion for additional peremptory challenges cannot be argued to cure this omission.

The pertinent parts of the applicable statute are:

(h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

(i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:

(1) Had peremptorily challenged the juror; or

(2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

N.C. Gen. Stat. § 15A-1214(h) and (i) (1983). Defendant failed to comply with the statute because he did not renew his challenge for cause.

State v. Watson

The defendant having made no showing that he was ever forced to accept a juror that he did not want, this assignment of error is overruled.

[6] By his next two assignments of error, defendant alleges that at trial certain photographs were improperly admitted into evidence: State's Exhibits 1 and 2, photographs of the victim, Officer Coleman, in the hospital emergency room; and State's Exhibit 3, a photograph of Coleman behind a desk with his fishing pole at his side.

Dr. Richard Sutton, a physician in the emergency room at Charlotte Memorial Hospital, testified at some length about the victim's wounds at the time he was brought into the hospital. He identified the first two photographs as illustrating Coleman's appearance during the course of the emergency room treatment. The third photograph was identified by three witnesses as illustrating the victim when he was alive. The jury was given cautionary instructions with respect to these photographs.

Defendant argues that the introduction of the third picture "is an attempt to create sympathy for the victim and disgust for the person who would kill this wonderful man," while the emergency room pictures "are excessive and have no purpose but to inflame the jury."

We find no error in the admission of these photographs. No prejudice whatever has been argued or shown with respect to the third photograph. With respect to the first two photographs, it is well settled that:

> Properly authenticated photographs of the body of a homicide victim may be introduced into evidence under instructions limiting their use to the purpose of illustrating the witness' testimony. Photographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words. The fact that the photograph may be gory, gruesome, revolting or horrible, does not prevent its use by a witness to illustrate his testimony.

*State v. Cutshall,* 278 N.C. 334, 347, 180 S.E. 2d 745, 753 (1971).
*See also State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969),
*death sentence vacated,* 403 U.S. 948 (1971).

We overrule these assignments of error.

[7] Finally, defendant argues, the trial court committed reversible error in denying his request for a jury instruction on the lesser included offense of involuntary manslaughter.

Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971); *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963). In *Foust*, this Court noted:

> It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, *in the absence of intent to discharge the weapon, or in the belief that it is not loaded,* and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter.

258 N.C. at 459, 128 S.E. 2d at 893 (emphasis added).

By defendant's own admission, he intended to fire the gun he was holding pointed in the direction of Officer Coleman. He was fully aware that it was loaded.

We hold that on the facts of this case there exists sufficient evidence of defendant's implied malice in his intentionally firing at Ernest Coleman—whether to frighten or to kill him—as to manifest the utter disregard of social duty which removes this case from the involuntary manslaughter category of homicide.

No error.