STATE OF NORTH CAROLINA v. WILLIAM WESLEY POINDEXTER

No. 8318SC832

(Filed 7 August 1984)

1. **Constitutional Law § 45— right not to testify—failure to inform pro se defendant**

    Although the better practice is for the trial judge to inform a *pro se* defendant of his right not to testify, failure to inform defendant in this case, if error, was harmless, since defendant was specifically identified as the assailant of the murder victim, and defendant repeatedly expressed his intent to tell his "story" and therefore most likely would not have availed himself of the privilege against self-incrimination.

2. **Constitutional Law § 46— appointed counsel—reluctance to pursue self-defense —counsel discharged by defendant**

    There was no merit to defendant's contention that he was compelled by the trial judge to choose between representation by appointed counsel and presenting evidence on his claim of self-defense, since, throughout the pretrial inquiry, defendant remained adamant in his determination to discharge the appointed counsel and to proceed *pro se*; counsel's reluctance to pursue the line of defense demanded by defendant was not unreasonable in light of the

evidence that the victim was unarmed, defendant carried a sawed-off shotgun, and defendant chased the fleeing victim several blocks before shooting him twice; and defendant's decision to dismiss appointed counsel unless he pursued defendant's claim of self-defense was made by defendant without coercion or pressure from the trial court.

**3. Constitutional Law § 48— no substitute counsel—appearance pro se and by counsel simultaneously not permitted**

There was no merit to defendant's contention that the trial court should either have appointed substitute counsel or instructed appointed counsel to prepare to try the case and to call witnesses as requested by defendant, since defendant was not entitled to substitute counsel unless representation by counsel originally appointed would amount to a denial of defendant's right to effective assistance of counsel; defendant and appointed counsel in this case disagreed over tactics, but such disagreement generally does not render the assistance of the original counsel ineffective; counsel is in charge of and has the responsibility for the conduct of the trial, including the selection of the witnesses to be called; and defendant, in claiming the right to select witnesses, implied that he should have been allowed to act as co-counsel, but he had no right to appear *pro se* and by counsel simultaneously.

**4. Constitutional Law § 31— indigent defendant—no right to state paid investigator**

The trial court in a second-degree murder case did not err in denying defendant's request for a state paid investigator, since defendant wanted an investigator for the sole purpose of obtaining hospital documents; records of defendant's emergency room visit which occurred two weeks prior to the killing would not have added materially to defendant's claim of self-defense; and there was no evidence that the records were necessary for defendant to receive a fair trial.

**5. Constitutional Law § 68— presence of witnesses—no obligation of court to subpoena**

There was no merit to defendant's contention that the trial court failed to assist him in locating and subpoenaing his witnesses, since defendant had ample opportunity prior to trial to subpoena his witnesses or make the necessary motions and applications to secure the presence of any unwilling or confined witnesses and he failed to do so.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 24 February 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 8 February 1984.

Defendant was tried and found guilty of murder in the second degree of Larry Richmond. From his conviction and sentence, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel F. McLawhorn, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender, Malcolm R. Hunter, Jr., for the defendant appellant.*

JOHNSON, Judge.

On 16 February 1983, defendant filed a *pro se* motion to discharge the public defender appointed to represent him. In support of his motion, defendant stated that: (1) he was dissatisfied with the appointed counsel; (2) the appointed counsel had neglected defendant's case; (3) the appointed counsel had repeatedly refused to handle the case in defendant's best interest; and (4) the appointed counsel acted in concert with the State's interest. When defendant's case was called for trial on 23 February 1983, the trial judge conducted a hearing on defendant's *pro se* motion to discharge his court appointed counsel. After the trial court had made a thorough inquiry and was satisfied that defendant (1) had been clearly advised of his right to the assistance of counsel, (2) understood and could appreciate the consequences of his decision to represent himself, and (3) was able to comprehend the nature of the charge and the proceedings and range of permissible punishment. Accordingly, the trial court granted defendant's motion to dismiss appointed counsel. Defendant was allowed to proceed to trial *pro se.* However, the court appointed the discharged counsel to remain as standby counsel.

At trial, the evidence tended to show that defendant had known the victim for several months and they had been involved in various drug deals together. Defendant, after learning that the victim was a police informant, discontinued his drug dealings with the victim. In the meantime, several incidents occurred wherein the victim pistol whipped defendant's roommate and threatened another of defendant's friends. On the afternoon of 22 December 1978, the victim went to defendant's apartment where he insisted that defendant leave town. They argued and the victim shot a hole in the roof of the defendant's apartment. A few hours later, defendant went to the victim's home where they again argued. The victim and a friend visiting with him fled from the home into the street. Defendant pursued the victim into the street where

the killing occurred. Defendant admitted the killing but testified that he acted in self-defense.

The jury returned a verdict of guilty and defendant was given an active prison sentence.

The defendant brings forward four assignments of error relating to *pro se* representation. We have reviewed each of these assignments and find no reversible error.

[1] Defendant in his first assignment of error contends that the trial court erred in failing to advise him of his right not to testify. He argues that the court should have informed him that he had a right not to testify and that his decision not to testify could not be used as an inference of guilt. The record discloses that the trial court did not specifically inform defendant of his fifth amendment privilege against self-incrimination. The record does indicate, however, that defendant was not coerced or pressured to testify.

The fifth amendment privilege, belatedly claimed by defendant, says no more than a person shall not be *compelled* to speak. It does not place upon the trial court the duty of informing a *pro se* defendant of his rights and privileges. In fact, the courts in this State have held that a defendant who knowingly and intelligently elects to proceed *pro se,* "cannot expect the trial judge to relinquish his role as impartial arbiter in exchange for the dual capacity of judge and guardian angel of defendant." *State v. Lashley,* 21 N.C. App. 83, 85, 203 S.E. 2d 71, 72 (1974); *State v. McDougald,* 18 N.C. App. 407, 410, 197 S.E. 2d 11, 13, *cert. denied,* 283 N.C. 756, 198 S.E. 2d 726 (1973). Moreover, our courts have ruled that a defendant who chooses to proceed *pro se* "does so at his peril and acquires as a matter of right no greater privilege or latitude than would an attorney acting for him." *State v. Cronin,* 299 N.C. 229, 244-245, 262 S.E. 2d 277, 287 (1980); *State v. Lashley, supra,* at 85, 203 S.E. 2d at 72. *See also* Note, Right to Defend *Pro Se,* 48 N.C. Law Rev. 678, 683-684 (1970).

Assuming, *arguendo,* that the court had a duty to inform the *pro se* defendant of his fifth amendment privilege against self-incrimination, we find no evidence that the court's failure to so advise defendant affected the outcome of the trial. Therefore, any error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705, 710-711,

*reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed. 2d 241 (1967). Several witnesses for the State identified defendant as the assailant. One witness identified defendant as the individual who chased the victim with a shotgun. Another witness observed defendant and the victim at the scene of the shooting. Still another witness testified that the victim's fatal wounds were caused by shotgun blasts. Other State's witnesses observed circumstances corroborative of the shooting.

Furthermore, there is every reason to believe that defendant would not have availed himself of the privilege against self-incrimination. In response to the trial court's statement that he would be subjected to cross-examination if he should testify, defendant stated:

Your honor, that doesn't matter. What I'm saying is I will have a chance to tell my story. . . .

Throughout the pretrial inquiry and the trial itself, defendant repeatedly expressed his intent to tell his "story."

We conclude that although clearly the better practice in such cases would be for the trial judge to inform a *pro se* defendant of his fifth amendment privilege, failure to specifically inform the defendant in the present case was, if error, harmless.

[2] In his next assignment of error, defendant contends that the court erred "by making the defendant give up assistance of counsel as the cost for presenting evidence in his defense." He argues that he was compelled by the trial judge to choose between representation by appointed counsel and presenting evidence on his claim of self-defense. The record belies this contention.

The record is replete with evidence of defendant's insistence that the appointed counsel be removed from the case. Several days prior to trial, defendant filed two documents in which he asserted his desire to discharge his appointed attorney. At the pretrial inquiry, defendant repeatedly and unequivocally demanded that the appointed attorney be relieved and that he be allowed to proceed *pro se*. Portions of the colloquy between defendant and the court are as follows:

The Court:          We have certain rules of evidence that are very technical. It takes somebody with

> training to know how to object to certain
> evidence to protect a defendant's rights.
> Mr. Lind is very capable of doing that.

Mr. Poindexter:  I don't want him.

The Court:       And you have the right to have Mr. Lind
                 represent you if you want. And, of course,
                 you have the right to represent yourself.

Mr. Poindexter:  I don't want Mr. Lind.

Throughout the pretrial inquiry, defendant remained adamant in his determination to discharge the appointed counsel and to proceed *pro se*. He never wavered from this position. Since counsel cannot be imposed on a defendant, the trial court had no alternative but to grant defendant's motion to dismiss his counsel. *Faretta v. California*, 422 U.S. 806, 820, 95 S.Ct. 2525, 2533, 45 L.Ed. 2d 562, 573 (1975); *State v. Gerald*, 304 N.C. 511, 516, 284 S.E. 2d 312, 316 (1981); *State v. McNeil*, 263 N.C. 260, 267-268, 139 S.E. 2d 667, 672 (1965).

Defendant's insistence on presenting evidence which he believed would establish the defense of self-defense was contrary to the trial strategy proposed by appointed counsel. The trial counsel had decided to proceed by challenging the sufficiency of the State's identification evidence. Proffering a defense of self-defense, which necessarily requires defendant to admit the crime, would have removed this option. Although the evidence adduced at trial tended to show that the victim was a violent man and had threatened defendant on the day of the killing, there was uncontroverted evidence that defendant voluntarily went to the victim's home where the affray ensued. The defendant's own evidence revealed that at no time during the incident did defendant attempt to retreat. In fact, when the victim fled from his home, defendant was in hot pursuit and the killing took place several blocks away from the place where the incident began.

Self-defense requires, in part, a showing that the defendant did not use excessive force and that the defendant was not the aggressor. *State v. Norris*, 303 N.C. 526, 530, 279 S.E. 2d 570, 572 (1981). In the case at bar, the evidence tended to show that: the victim was unarmed; defendant carried a sawed-off shotgun; and defendant chased the fleeing victim several blocks before shoot-

ing him twice. Based on these facts, counsel's reluctance to pursue the line of defense demanded by the defendant was not unreasonable. In sum, the record shows that defendant's decision to dismiss the appointed counsel unless he pursued defendant's claim of self-defense was made by defendant without coercion or pressure from the trial court.

[3] Defendant also contends that the trial court should have either appointed substitute counsel or instructed appointed counsel to prepare to try the case to call the witnesses as requested by defendant. The principles applicable to criminal prosecutions are well settled. An indigent defendant is entitled to appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963). He is not, however, entitled to substitute counsel unless representation by counsel originally appointed would amount to a denial of defendant's right to effective assistance of counsel. *State v. Thacker*, 301 N.C. 348, 352, 271 S.E. 2d 252, 255 (1980); *United States v. Young*, 482 F. 2d 993 (5th Cir. 1973).

The court's lengthy inquiry into defendant's complaints against appointed counsel disclosed that defendant's dissatisfaction centered around counsel's decision to pursue a line of defense contrary to defendant's wishes. It is well recognized that trial counsel's decision to pursue a particular defense is a tactical one based on his professional judgment. A disagreement over tactics generally does not render the assistance of the original counsel ineffective. *State v. Hutchins*, 303 N.C. 321, 355, 279 S.E. 2d 788, 797 (1981); *State v. Robinson*, 290 N.C. 56, 66, 224 S.E. 2d 174, 179 (1976).

Defendant also argues that the court should have required appointed counsel to try the case and allow the defendant to present the witnesses that defendant wished to have testify on his behalf.

While counsel, whether retained or appointed, should be solicitous of defendant's concerns and willing to accommodate defendant in doing such things as defendant feels are in defendant's best interest, counsel is not the "mere lackey or 'mouthpiece' of his client." *State v. Robinson, supra*, at 66, 224 S.E. 2d at 179. Counsel is in charge of and has the responsibility for the conduct of the trial, including the selection of the witnesses to be

called. *Id.* As counsel, he is required to present evidence which in his professional judgment will effectuate his client's interest. Clearly, counsel should not be required to conduct a trial in a manner in which he believes, based on the facts and circumstances of the case, to be harmful and unreasonable. Defendant, by his argument, also implies that he should have been allowed to act as co-counsel with appointed counsel. While defendant had a right to counsel and a right to appear *pro se*, he had no right to appear *pro se* and by counsel, simultaneously. G.S. 1-11; G.S. 15A-1242; *State v. Parton*, 303 N.C. 55, 61, 277 S.E. 2d 410, 415 (1981); *State v. Phillip*, 261 N.C. 263, 268, 134 S.E. 2d 386, 391, *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed. 2d 1052, *reh'g denied*, 379 U.S. 874, 85 S.Ct. 28, 13 L.Ed. 2d 83 (1964). Therefore, we hold that this assignment of error is without merit.

Defendant, by his final assignments of error, contends that the court erred in denying his request for a publicly paid investigator and in failing to assist him in having his witnesses subpoenaed. He argues, first, that the information that would have been collected by the investigator was relevant to his claim of self-defense. G.S. 7A-450(b), in pertinent part, provides:

> Whenever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and *other necessary expenses of representations*. (Emphasis added.)

In conformity with this statute, our courts have consistently held that an indigent is entitled to a state paid expert or investigator when it is necessary to insure effective preparation of a defense. *See, e.g., State v. Watson*, 310 N.C. 384, 390, 312 S.E. 2d 448, 453 (1984); *State v. Tatum*, 291 N.C. 73, 82, 229 S.E. 2d 562, 566-567 (1976). However, such assistance is not constitutionally mandated. *State v. Watson, supra*, at 390, 312 S.E. 2d at 453. Whether the assistance is necessary depends upon the facts and circumstances of each case and is a question properly left within the sound discretion of the trial judge. *State v. Tatum, supra*, at 82, 229 S.E. 2d at 567-568.

In *Watson*, our Supreme Court has stated that "[t]he applicable rule is that expert assistance need only be provided by the state when the defendant can show it is probable that he will

not receive a fair trial without the requested assistance, or upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense." 310 N.C. at 390, 312 S.E. 2d at 453.

[4] Applying this rule to the case at bar, the record reveals that defendant wanted an investigator for the sole purpose of obtaining hospital documents. According to defendant, the hospital records would show that due to his fear of the victim, defendant was admitted to the emergency room of a local hospital for "nerves." Records of the emergency room visit, which occurred approximately two weeks prior to the killing, would not have, in our view, added materially to defendant's claim of self-defense. Nor is there any evidence that the hospital records were necessary for defendant to receive a fair trial. Thus, we find that the court did not abuse its discretion in denying defendant's request for a state paid investigator. Hence, this assignment of error is without merit.

[5] Defendant next argues that the court failed to assist him in locating and subpoenaing his witnesses. In pursuit of this contention, defendant argues that the court should have insured the presence of his witnesses. He argues, further, that G.S. 15A-803 and G.S. 15A-823 give the court the authority to secure the presence of his witnesses who are unwilling or who are confined.

Proceedings to secure the attendance of unwilling witnesses are governed by G.S. 15A-803, which provides in pertinent part:

(a) Material Witness Order Authorized—A judge may issue an order assuring the attendance of a material witness at a criminal proceeding. This material witness order may be issued when there are reasonable grounds to believe that the person whom the State or a defendant desires to call as a witness in a pending criminal proceeding possesses information material to the determination of the proceeding. . . .

. . . .

(d) Procedure—A material witness order may be obtained upon motion supported by affidavit showing cause for its issuance. . . .

The presence of a witness confined in a federal institution can be secured under G.S. 15A-823, which provides in part:

(a) When

. . . .

(2) There is a reasonable cause to believe that a person confined in a federal prison or other federal custody, . . . possesses information material to such criminal proceeding;

. . . .

(b) The certificate may be issued upon application of either the State or a defendant . . . .

Our review of the record discloses that defendant did not avail himself of any of these means to secure the attendance of his witnesses. The record clearly shows that defendant had ample opportunity prior to trial to subpoena his witnesses or to make the necessary motions and applications to secure the presence of any unwilling or confined witnesses. The record reveals that defendant came on for trial approximately six months after counsel was appointed. At no time during this period did he inform the court or his appointed counsel of the names and location of his prospective witnesses. In fact, defendant did not request assistance in obtaining subpoenas for his witnesses until after the close of the State's case in-chief.

Even if we were to construe this request as a motion and application under G.S. 15A-803 and G.S. 15A-823, we find that the requirements of these statutes were not met. To obtain a material witness order or certificate known as a writ of habeas corpus ad testificandum, a party must show to the court that the prospective witness has information material to the determination of the proceeding. Although the evidence tended to show that the prospective witnesses were aware of the previous altercations between defendant and the victim, there is no evidence in the record that these witnesses had knowledge of the events immediately surrounding the killing. Therefore, we believe that the testimony of the prospective witnesses was not material to these proceedings. Moreover, we believe that defendant's own lack of diligence is responsible for the absence of his witnesses. *State v. Wells*, 290 N.C. 485, 491-492, 226 S.E. 2d 325, 330 (1976). Under

circumstances such as these, our Supreme Court has ruled that an accused "may not place the burden on officers of the law and the court to see that he procures the attendance of witnesses and makes preparation for his defense." *State v. Tindall*, 294 N.C. 689, 700, 242 S.E. 2d 806, 813 (1978). Notwithstanding defendant's eleventh hour request, the trial court, by directing police officers to locate defendant's witnesses, made every reasonable effort to assist defendant. Accordingly, this assignment of error is without merit.

In defendant's trial we find

No error.

Chief Judge VAUGHN and Judge WEBB concur.